## MORRIS, INC.
*vs.*
## ABE NIMAN ET AL.

Superior Court        Hartford County        File No. 62781

MEMORANDUM FILED MARCH 30, 1943.

*Samuel Gold,* of Hartford, for the Plaintiff.

*Wall, Wall & Wall,* of Torrington, for the Defendant.

INGLIS, J. This action arises out of a series of transactions between the plaintiff and the defendant Widam which occurred in the period from March 29 to April 4, 1940. Widam was a cattle dealer and the plaintiff was in the business of slaughtering and selling meat at wholesale. The practice was for the plaintiff to make lump sum advances to Widam. Widam would then bring in cattle to the plaintiff; the plaintiff would do the slaughtering, sell the meat and credit Widam with the proceeds of such sale as against its advancements to him. The parties would adjust and strike a balance of the account at the end of each week or ten-day period.

During the period in question the plaintiff advanced to Widam a total of $3,400. In addition the plaintiff had a credit against Widam from the previous period of $300, making a total of $3,700. During the period the amount realized by the plaintiff from the sale of the meat totaled $2,914.87, leaving a balance due on April 4, 1940, of $785.13. Interest thereon to date amounts to $141.32, so that the total now due is $926.45.

The basis upon which the plaintiff seeks to hold the defendant Niman is that he was either the partner or the undisclosed principal of Widam. The arrangement between the two was as follows: Widam was a cattle dealer and had a market for cattle with the plaintiff. He was, however, without capital. Niman had dabbled in the cattle business as a side line and therefore knew some of the farmers who raised cattle. He also had a checking account of considerable size. Without any formal agreement between the two therefore it was the practice for Niman to accompany Widam on his trips around the country to buy cattle. He sometimes suggested places where cows could be purchased. Widam did the purchasing without any suggestions from or control by Niman as to what he should buy or how much he should pay for it. Niman simply drew his check for the purchase price of the stock bought. His compensation for this was to be a "commission" of from three dollars to five dollars for each cow bought. Widam delivered the cattle to the plaintiff. Niman had nothing to say about the terms of the sales to the plaintiff. When the plaintiff paid Widam lump sums on account, Widam endorsed those checks to Niman. Niman deducted therefrom the total amount that he had advanced to Widam for the purchase of cattle and the amount of his commissions and returned the balance to Widam.

It is to be noted that none of the standard tests of a partnership relation were present in this arrangement. Niman was to share in neither the profits nor losses of the business. 20 *R.C.L. Partnership,* pp. 823-829. The compensation received by Niman bore no relationship to Widam's profits and in no event was Niman to share in Widam's losses if any. Niman had neither the ownership nor control of any of the assets of the business. There was no community of interest in either the cattle or the proceeds of the sale thereof except that Widam was bound to use the checks he received from the plaintiff to pay Niman what he owed him. 20 *R.C.L.*

*Partnership,* pp. 829-831. Nor was there any intention in the minds of either of the parties that there should be a partnership between them. 20 *R.C.L. Partnership,* p. 831.

Although under Connecticut law the only ultimate test of a partnership is whether between two or more persons such a relationship exists that each is as to all the others, in respect to some business, both principal and agent, nevertheless ordinarily the sharing of profits and losses is one of the essential incidents of a partnership. *Active Market, Inc. vs. Leighton,* 124 Conn. 500, 504; *Landow & Co., Inc. vs. Maisano,* 118 id. 214. "If money which a person loans to another to be used in a business enterprise is to be repaid by the borrower, whether the venture proves a success or a failure, the contract is ordinarily construed to be one of lending and borrowing and not of joint adventure, and the lender acquires no.... liability to a third person for debts contracted by the borrower." 33 *C.J. Joint Adventures* §4, p. 842 (quoted with approval in *Landow & Co., Inc. vs. Maisano, supra,* p. 219).

In the present case it is clear that the gist of the arrangement between Niman and Widam was that, for a commission and not for a share of the profits, the former was loaning money to the latter. As regards the business done by Widam, Niman was neither a principal nor an agent. Accordingly there was no partnership between them, and certainly Niman was not an undisclosed principal for whom Widam was acting as an agent.

Niman in no way represented to the plaintiff that Widam was his partner or agent. The plaintiff did not extend credit to Niman or to Niman and Widam. The credit was extended by it to Widam alone. Therefore Niman is not estopped to deny the partnership and agency.

There can be no recovery against Niman.

Niman has filed a counterclaim. One check issued by the plaintiff to Widam on October 30, 1939, for $300 was delivered by Widam to Niman in accordance with the usual procedure but by inadvertence Widam did not indorse it. Later over the telephone he authorized Niman to have his name written on the back of the check by Niman's son. This was done and the check was deposited by Niman in The Brooks Bank and by that bank forwarded for collection to The Phoenix State Bank and Trust Company, the bank on which it was drawn. On November 18, 1939, the plaintiff

gave another check to Widam for $200. This check like-wise was delivered to Niman without indorsement. On this check Niman had Widam's name written by his son and this was later approved and ratified by Widam. This check also went through the Brooks Bank and was collected. On April 10, 1940, Widam made affidavit that his purported signatures on the checks were forged and on the strength of that affidavit The Phoenix State Bank and Trust Company charged the amount of $500 back to The Brooks Bank, and that bank on April 16th charged $500 to Niman's account. Thereafter The Phoenix Bank credited the amount of the checks to the plaintiff's account and the plaintiff paid the $500 to the order of Widam.

The transfer of the checks from Widam to Niman was for value and thereby title to the checks was vested in Niman, together with the right to have Widam's indorsement. Gen. Stat. (1930) §4366; Goodsell vs. McElroy Brothers Co., 86 Conn. 402, 408; Myrtilles, Inc. vs. Johnson, 124 id. 177, 180. When Widam authorized and ratified the act of putting his name on the back of each check, the checks were negotiated to Niman so that he became a holder in due course. In any event, it does not appear that there were then any equities between the plaintiff and Widam to which the checks were subject. Accordingly there can be no question but that at that time the plaintiff was obligated to Niman on the checks. The charging back of the checks by the bank accomplished the same result as though the Phoenix Bank had refused to honor the checks in the first place, and put Niman in the position where he could insist on payment of the checks by the plaintiff. The fact that the plaintiff saw fit to pay over the amount of the checks to Widam does not affect its lia-bility to Niman.

Interest on the amount of these checks from April 16, 1940, amounts to $87.50.

Judgment may enter for the plaintiff on the complaint to recover from the defendant Widam $926.45 and its taxable costs; but in favor of the defendant Niman and for the de-fendant Niman to recover from the plaintiff on the counter-claim $587.50 and his taxable costs.